### MERCIER'S ADX. vs. SARPY'S ADX.

THE plaintiff's intestate had sent from Bourdeaux to the defendant's intestate, sundry vessels loaded with goods for their joint account, and had made all the advances. This happened at a time when assignats were the currency of France, and their value was below the nominal amount. The defendant's intestate received the cargoes in New-Orleans, and sold them for the joint account and made returns, which were disposed of

<div style="float:right">

FALL 1809,
First District.

MERCIER'S ADX.
*vs.*
SARPY'S ADX.

Depreciation of assignats——claim of interest ——allowance of bad debts.

</div>

FALL 1809,
First District.

MERCIER'S ADX.
*vs.*
SARPY'S ADX.

in France, while the assignats continued below par. Part of the goods were sold on credit by the defendant's intestate, and some of the purchasers failed.

THE plaintiff claimed a balance of about thirty thousand dollars, including interest and reducing the nominal sums in assignats, according to a scale of depreciation published by the French government.

THE defendant introduced a letter from the plaintiff's intestate, instructing her intestate to retain his funds, and it did not appear that this instruction was countermanded until the 29th of August 1796—and also another relating to former transactions in which a claim to interest was waved.

*Prevost* for the defendant. Interest ought not to be allowed. It is only admitted where custom or agreement authorizes it; it is true when nothing appears in the transactions of parties which affords a rule of interpretation, their contracts must be construed according to the usage and custom of the place. But here, it is in evidence that in the anterior transactions, with the defendant's intestate, the plaintiff's intestate claimed no interest, we are to conclude that if the intention of any of the parties had been to alter their mode of dealing, he ought to have stipulated for a change.

THE books of Mercier shew that during the life of the parties, a reduction of the assignats was never thought of. The cargoes were purchased, and the returns sold, in assignats.

THE bad debts ought to be deducted—the parties were quasi-partners. Each was to do for the best—and as the profits were to be borne by both, so must the loss.

*Derbigny*, for the plaintiff. It is not denied that interest is allowed among merchants as a compensation for the privation of a portion of the creditor's capital, and it is also in evidence, that in the city of Bourdeaux, the ordinary rate sanctioned by government, is six per cent. so that unless the court presume that the plaintiff's intestate renounced his right, interest must be given. *Nemo presumitur donare.* As to the period from which the interest is to be computed, it seems that the defendant's intestate was without an excuse in keeping Mercier's funds from the day he received the order to forbear to retain them, admitting that there was no improper detention anterior to the letter.

ASSIGNATS were the currency of France during the time that the intestates of the parties dealt together. They were the circulating medium and the money of account of the country, and at times of less and at others of more value, and the true situation of the parties could be ascertained in no other way than by striking a balance at stated periods, and finding the real value of such a balance in gold and silver, according to the scale of depreciation established by law.

IF the defendant claims an allowance for bad debts, it must be shown that the persons to whom

K

FALL 1809,
First District.

MERCIER'S ADX.
vs.
SARPY'S ADX.

sales were made, were solvent at the time, and that the necessary steps for the recovery of the debts have not been omitted or delayed.

*By the Court,* LEWIS, *J. alone.* Mercier's letter furnishes ample proof that his funds were not detained, after the receipt of his letter, for the benefit of the defendant's intestate, in whose hands it was a deposit for the advantage of Mercier, till his instructions were countermanded in 1796. After that period interest is to begin at six per cent. the commercial rate of interest both in Bourdeaux and New-Orleans.

THE depreciation of assignats ought not to affect the defendant. Her intestate shipped colonial produce, which Mercier sold, no doubt in assignats: the proceeds were a legal payment according to the laws of the country, and the nominal value was a proper set off to Mercier's demand, on the day of the sale. If he kept them till they were depreciated farther, he must bear the loss.

SARPY, who was jointly interested in the sales at New-Orleans, must be presumed to have acted fairly, until the contrary be proven. If he sold to persons notoriously insolvent, he committed a fraud, and fraud is never presumed. The same principle applies to the degree of industry which was to be exercised in the collection. His intestate is only to account for what he received.